UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff,<br><br>       v.<br><br>RUBEN MARTINEZ,<br><br>                           Defendant. | Case No. 15-cr-2821-BAS-4<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br>**(ECF No. 493)** |

Defendant Ruben Martinez files a motion to reduce his sentence from thirty-three months to time served (a little over one year) in light of the risk he faces from COVID-19. (ECF No. 493 ("Motion").) The Government opposes. (ECF No. 495 ("Opposition").) For the reasons stated below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

Mr. Ruben Martinez ran a clinic in Calexico, California. (Government's Sentencing Memo ("Sent'g Memo") at 3–5, ECF No. 410.) Mr. Martinez provided a chiropractor, Steven Rigler, free rent, staff, utilities, and administration, and he solicited patients for treatment at the clinic. (*Id.*; Presentence Report ("PSR") ¶ 17, ECF No. 396.) In exchange, Dr. Rigler allowed Mr. Martinez to sell off ancillary referral services, like MRIs (Magnetic Resonance Imaging) and ECT (Extracorporeal Shockwave Therapy) to the highest bidder. (Sent'g Memo at 3–5.)  Ancillary service providers paid kickbacks and bribes to Mr.

Martinez for referring patients, and he was required to meet a quota of referrals. (*Id.*; PSR ¶ 25.) The ancillary referral services were billed to the Workers' Compensation system. (Sent'g Memo at 3–5.) Mr. Martinez falsely characterized the payments he received from the ancillary service providers as "professional services." (PSR ¶ 30.) Mr. Martinez pled guilty to conspiracy to commit honest services mail fraud and health care fraud. (*Id.* ¶ 2.)

Mr. Martinez cooperated with the Government after pleading guilty and testified at trial against co-defendants. At sentencing, the Court enhanced Mr. Martinez's guideline range sixteen points because of the amount falsely billed to Workers' Compensation. (*See* PSR ¶ 53.) Although Mr. Martinez agreed to this calculation as part of his plea agreement and waived his right to appeal, the calculation was reversed on the appeal of a co-defendant. *United States v. Grusd*, 787 Fed. App'x 922, 925 (9th Cir. 2019). In the *Grusd* appeal, the Ninth Circuit held "[t]he district court erred by failing to consider whether to deduct at least some amount from the total billed amount" for the fair market value of any services actually provided. *Id.* Before this ruling, the Court sentenced Mr. Martinez to thirty-three months in custody and three years of supervised release and ordered forfeiture of $29,987.28. (ECF Nos. 130, 427.)

Mr. Martinez was on pre-trial release for almost four years and had no violations. (PSR ¶ 45.) The Court continued Mr. Martinez's self-surrender date multiple times, but on August 14, 2019, he self-surrendered and began serving his sentence. (ECF No. 442.) He also had twenty days pre-sentence credit, so he has served a little over a year of his thirty-three month sentence.

Mr. Martinez, who will turn sixty-four next month, has suffered from Type II diabetes for over fifteen years. (PSR ¶ 89.) He takes Metformin twice a day to treat this condition. (*Id.*) Mr. Martinez is currently being housed at USP Lompoc, a minimum security facility. The Bureau of Prisons ("BOP") reports 170 inmates at this facility have tested positive for COVID-19, with 167 of those recovered, and 24 staff have tested positive with all recovered. *See* BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited August 6, 2020). Two inmates at this facility have died. *Id.* At a nearby

facility, FCI Lompoc, 805 inmates have tested positive, with 802 reported recovered and 17 staff have tested positive with all but one recovered. *Id.* Two inmates at this facility have also died. *Id.*

Mr. Martinez previously filed a Motion to Reduce his sentence, which the Court denied for failure to exhaust administrative remedies. (ECF Nos. 474, 475.) On April 15, 2020, Mr. Martinez submitted a request to the Warden of the facility where he is being housed to complete his sentence in home confinement. (Motion, Exh. B.) Mr. Martinez made another request to the Warden on June 15, 2020, which was denied on July 10, 2020. (Motion, Exh. E.) Mr. Martinez provides no evidence that he appealed this request.

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Martinez must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, __ F. Supp. 3d __, 2020 WL 2301202, at *6 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.* This Court agrees with the vast majority of

courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

The Government may waive the exhaustion requirement, however, by asking the court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, at *7. The Government, in its Opposition, submits on the issue of exhaustion and addresses the substantive issues. Therefore, the Court finds the Government has waived the exhaustion requirement in this case.

### B. Extraordinary and Compelling Reasons

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, No. 3:13-cr-444-BR, 2020 WL 1673440, at *3 (D. Or. April 6, 2020).

The Government generally agrees that Mr. Martinez is facing "extraordinary and compelling" circumstances such that the Court may reduce his sentence. (Opposition at 11–12.) The facility where he is being housed, despite many precautions, has suffered an outbreak of COVID-19. Even with extraordinary precautions, it is difficult, if not impossible, for a custodial facility to provide the conditions that protect the inmates from the spread of the disease once it takes hold. Furthermore, Mr. Martinez, at sixty-three years old and suffering from Type II diabetes, is at risk if he were to contract the disease. *See*

CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 30, 2020) (advising that people with Type II diabetes "are at increased risk of severe illness from COVID-19"); CDC, Coronavirus Disease 2019 (COVID-19), Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated July 30, 2020) (advising that "people in their 60s or 70s are, in general, at higher risk for severe illness than [those younger]").  Therefore, the Court agrees Mr. Martinez has shown extraordinary and compelling reasons for his release.

### C.     The Section 3553 Factors

The Government's primary argument is that the § 3553(a) factors, specifically the seriousness of the offense, general deterrence, and preventing unwarranted disparities, militate against the Court granting the Motion.  (Opposition 13–15.)  With respect to the seriousness of the offense, the Court adopts the statement it made initially at a co-defendant's sentencing.  This was a serious offense that undermines the Workers' Compensation system—a system designed to help those in need.  However, Mr. Martinez's role, compared to many of his co-defendants, was less serious.  Furthermore, he cooperated and provided testimony against many of these co-defendants.  Notably, Dr. Rigler, who was the closest co-conspirator other than Mr. Martinez's son, was sentenced to only six months in custody (and the Government recommended a probationary sentence).  (*See* Case No. 15-cr-02773-BAS, ECF Nos. 34, 39.)

Furthermore, at the time the Court sentenced Mr. Martinez, his age and diabetes were considerations that did not appear as significant as they do now.  Indeed, the CDC reports that those over sixty with diabetes are likely to face serious consequences, even death, if they contract COVID-19.  *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 30, 2020); CDC, Coronavirus Disease 2019 (COVID-19), Older Adults,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated July 30, 2020). The Court did not intend Mr. Martinez's thirty-three month sentence to be a death sentence.

Finally, although the Government stresses that Mr. Martinez's ultimate sentence was a downward departure from the Probation calculation and recommendation, the Government now knows that this calculation was in error. In fact, if the Court had attempted to deduct at least some amount from the total loss for the fair market value of services actually provided, Mr. Martinez's guideline calculation would have been considerably lower.

Ultimately, the Court finds the § 3553 factors support Mr. Martinez's request for immediate release. Thus, the Court grants Mr. Martinez's Motion for Reduction in his Sentence.

## III. CONCLUSION

Because of "extraordinary and compelling reasons" the Court **GRANTS** Mr. Martinez's Motion to Reduce his Sentence (ECF No. 493). The Court reduces Mr. Martinez's sentence to a time served sentence.

Further, the Court declines to follow the Government's request to require Mr. Martinez to remain on home confinement once released. The resources of the Probation Department are being heavily taxed with recent releases because of the COVID-19 virus. Home confinement is better reserved for defendants whom the Court believes may pose a risk to the public if not closely monitored. Mr. Martinez was on pre-trial release for almost four years without incident. The Government in its Opposition admits that the likelihood that Mr. Martinez will pose a danger to the community is slight. (Opposition at 12–13.) Therefore, the Court declines to add any additional conditions to Mr. Martinez's supervised release. The term and conditions of supervised release remain the same.

Finally, this order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Defendant's safe release. Defendant shall be released as soon

as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

**DATED: August 6, 2020**

Hon. Cynthia Bashant
United States District Judge